# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| **MARK D. BERGNER,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **v.** | **)** | **CAUSE NO. 1:15-cv-00381-SLC** |
| | **)** | |
| **COMMISSIONER OF SOCIAL** | **)** | |
| **SECURITY,** *sued as Carolyn W.* | **)** | |
| *Colvin, Acting Commissioner of SSA,*[1] | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

## OPINION AND ORDER

Plaintiff Mark D. Bergner appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application under the Social Security Act (the "Act") for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").[2] (*See* DE 1). For the following reasons, the Commissioner's decision will be REMANDED.

## I. PROCEDURAL HISTORY

On August 3, 2009, Bergner filed his applications for DIB and SSI, alleging disability as of July 1, 2006. (DE 8 Administrative Record ("AR") 169-80). Bergner's application was denied on November 13, 2009 (AR 113-20), and he did not request a review of the denial. On August 31, 2012, Bergner filed a second application for DIB, alleging the same onset date of July 1, 2006. (AR 18, 179-85). This application was denied on December 7, 2012, and was

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security, *see Casey v. Berryhill*, 853 F.3d 322 (7th Cir. 2017), and thus, she is automatically substituted for Carolyn W. Colvin in this case, *see* Fed. R. Civ. P. 25(d).

[2] All parties have consented to the Magistrate Judge. (DE 11); *see* 28 U.S.C. § 636(c).

again denied upon reconsideration on February 26, 2013. (AR 18). Bergner filed a request for a

hearing before an Administrative Law Judge, and Administrative Law Judge Patricia Melvin (the

"ALJ") held a hearing on March 18, 2014, at which Bergner and Robert Stephen Barkhaus, a

vocational expert (the "VE"), testified. (AR 37-81). Bergner was represented by attorney Ann

Trzynka at the hearing. (AR 37). On June 17, 2013, the ALJ issued an unfavorable decision,

finding that Bergner was not disabled as defined in the Act. (AR 15-36). Bergner requested that

the Appeals Council review the ALJ's decision (AR 14), and the Appeals Council denied his

request, making the ALJ's decision the final, appealable decision of the Commissioner (AR 1-6).

Bergner filed a complaint with this Court on December 15, 2015, seeking relief from the

Commissioner's final decision. (DE 1). In his appeal, Bergner alleges that the ALJ erred by:

(1) failing to consider evidence that Bergner's condition equaled impairment Listings 4.12,

11.14, and 1.02; (2) failing to assign appropriate weight to the opinion of Dr. H.M. Bacchus, Jr.,

in her residual functional capacity ("RFC") determination; (3) failing to incorporate evidence of

Bergner's limitations in her hypothetical question to the VE; and (4) failing to assign appropriate

weight to Bergner's symptom testimony. (DE 14 at 13-25).

## II. FACTUAL BACKGROUND[3]

### A. Background

Bergner was 46 years old as of the alleged onset date, and 54 years old as of the date of

the ALJ's decision.[4] He has a high-school education and was not working at the time of the

administrative hearing. (AR 41). His employment history includes work in unskilled and semi-

---

[3] In the interest of brevity, this Opinion recounts only the portions of the 885-page administrative record necessary to the decision.

[4] For the purposes of the Act, a person under the age of 50 is considered a "younger person," whose age "will [not] seriously affect" that person's "ability to adjust to other work." 20 C.F.R. § 404.1563(c). However, a person who is between the ages of 50 and 54 is considered a "person closely approaching advanced age," whose age may "seriously affect" that person's "ability to adjust to other work." 20 C.F.R. § 404.1563(d).

skilled positions.  (AR 42-45).

## B. Bergner's Testimony at the Hearing

At the hearing Bergner testified as follows:  Bergner lives alone; he is not married and has no children.  (AR 41).  He is approximately five-foot seven-inches tall, and weighs about 190 pounds.  (AR 41).  While in high school, Bergner received vocational experience in building trades.  (AR 41).  Bergner does not have any source of income; Park Center paid his rent and utilities, and he receives food stamps and Medicaid.  (AR 41-42).  From 1999 to approximately 2006, Bergner worked at a variety of jobs that required him to occasionally lift more than 20 pounds; each job lasted between six months and two years, and he was fired from each position. (AR 42-45).  He last worked in 2010 or 2011.  (AR 42).  Bergner has had trouble getting along with coworkers and supervisors in the past.  (AR 59).

Bergner was not looking for work.  (AR 45).  He claimed that two physical impairments prevent him from working:  he needs a knee replacement and complications from neuropathy. (AR 45).  Neuropathy causes numbness, sharp shooting pain, and throbbing pain in both feet but it mainly affects his left foot.  (AR 45; *see also* AR 69).  Bergner started to experience problems from neuropathy in 2011.  (AR 45).  The longer Bergner stands, the more his feet go numb, however, his feet cramp or become numb even while he is sitting.  (AR 68-69).  The pain can last for hours, but it mostly occurs at night.  (AR 46).  On a scale of zero to 10, with zero being no pain and 10 being a trip to the emergency room, Bergner rated the pain in his feet as an eight during the day and a six at night.  (AR 46).  Bergner takes Tramadol for the pain, and Mobic and Robaxin for arthritis.  (AR 46, 48).  The Tramadol is somewhat effective, reducing the pain in his feet to a seven during the day and to a five at night.  (AR 47).  Bergner's pain subsides when he soaks his feet in the bathtub or elevates his feet.  (AR 48).

3

Bergner can walk for about 10 minutes at a time; stand for about 20 minutes at a time and about four hours total in an eight-hour period; sit for about 20 to 30 minutes at a time; and lift 20 pounds. (AR 56). Bergner can grip doorknobs, steering wheels, cups, and silverware; button buttons, zip zippers, and tie shoelaces; push bike pedals with his legs; bend over and touch his knees but not his toes; but has limitations climbing stairs. (AR 57). Bergner is able to dress, shower, and ride the bus by himself. (AR 59-60). Bergner can go shopping, do the dishes, do the laundry, make his bed, clean his kitchen and bathroom, and take out the garbage. (AR 60-61).

Bergner is an alcoholic, and despite attempting to stay sober, he occasionally relapses. (AR 61). He had one relapse in the past year. (AR 61). Bergner's alcohol use contributed to the reasons for his termination from jobs in the past and played a role in his mental health problems. (AR 62). Bergner feels more positive when he does not drink. (AR 63). Bergner smokes about half a pack of cigarettes a day and has not done any illegal drugs since about 2007. (AR 61). Apart from attending Alcoholics Anonymous twice a week, Bergner does not attend any clubs, organizations, or churches. (AR 58-59). Bergner was in a group home for a year in 2009 for treatment related to his PTSD, depression, and alcohol abuse. (AR 55).

### C. Summary of Relevant Medical Evidence

From November 12, 2008, until April 12, 2012, Bergner was a patient at the Northeastern Center and received treatment for various mental conditions. (AR 352-410). At his initial evaluation on November 12, 2008, Bergner reported that he was an alcoholic but he had been sober for three years. (AR 352). Bergner claimed to suffer from anxiety, depression, mental confusion, fatigue, grief, and hypertension. (AR 352).

On February 17, 2012, Bergner was seen by Candice Rosa, MSN, NP. (AR 425). In Ms.

4

Rosa's report, she assessed that Bergner had hypertension, osteoarthritis, rosacea, insomnia, and fluid in his right knee. (AR 425-26). On May 17, 2012, Ms. Rosa examined Bergner again and opined that his knee condition had improved. (AR 423).

On October 26, 2012, Kari Kennedy, Psy.D., a state agency psychologist, reviewed Bergner's record. (AR 95). Dr. Kennedy opined that Bergner was moderately limited in his ability to carry out detailed instructions, understand and remember detailed instructions, and concentrate for extended periods. (AR 94). In her narrative, Dr. Kennedy found that Bergner could understand and carry out simple instructions; make judgments associated with unskilled work; respond appropriately to brief supervision and interactions with coworkers; and deal with changes in a routine work setting. (AR 95). Dr. Kennedy concluded that Bergner could perform unskilled work. (AR 95). A second state psychologist, F. Kladder, Ph.D., reviewed Bergner's record on February 26, 2013, and reached the same conclusion as Dr. Kennedy. (AR 109-10). Dr. Kladder also opined that Bergner had mild limitations in activities of daily living and in maintaining social functioning, and moderate limitations in maintaining concentration, persistence, or pace. (AR 105-06).

On November 1, 2012, Dr. Bacchus examined Bergner. (AR 560-63). Dr. Bacchus's impression included that Bergner had depression, PTSD, a history of alcohol abuse, an MCL strain in his left knee, generalized joint pain, a history of chronic sinusitis, carpel tunnel syndrome in his left wrist, and tobacco abuse. (AR 562). Dr. Bacchus opined that Bergner could perform light to moderate duties, standing three to four hours in a six- to eight-hour day non-continuous, and that he had limitations with repetitive squatting, stooping, climbing, walking on uneven ground, kneeling, and crawling. (AR 562).

On December 4, 2012, Dr. Richard Wenzler, a state agency physician, reviewed

Bergner's record and opined that he could lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk six hours in an eight-hour work day; sit six hours in an eight-hour work day; climb stairs and ramps occasionally; never climb ladders; and occasionally balance, stoop, kneel, crouch, and crawl. (AR 91-93). Dr. Wenzler also found that Bergner had some environmental limitations. (AR 93). On February 26, 2013, Dr. Joshua Eskonen, a state agency physician, reviewed Bergner's record and reached the same conclusions as Dr. Wenzler. (AR 106-08).

On September 5, 2013, Bergner submitted to an examination by neurologist Dr. Carolyn Yap. (AR 755-57). Bergner's chief complaints were cramps and numbness in both feet. (AR 755). Dr. Yap's treatment plan for Bergner included an arterial Doppler ultrasound and an EMG of Bergner's lower extremities. (AR 757). On September 11, 2013, Bergner underwent an EMG and nerve conduction study with Dr. Ajay Gupta, who reported that the results of Bergner's "nerve conduction study" were compatible with "a nearly symmetrical sensory motor peripheral polyneuropathy with demyelinating features." (AR 753). On September 13, 2013, Bergner presented to Dr. Yap again for an arterial Doppler ultrasound. (AR 751-52). The Doppler ultrasound showed that Bergner had a diminished ankle brachial index ("ABI") on the left at 0.36 to 0.41, and a mildly diminished ABI on the right at 0.75 to 0.81. (AR 751). Dr. Yap opined that Bergner had significant left iliofemoral and to a lesser extent trifurcation disease. (AR 751). Additionally, Dr. Yap noted that Bergner had claudication in the left leg worse than the right. (AR 751).

On February 6, 2014, Dr. Gupta saw Bergner again. (AR 642). Bergner presented with "numbness in his toes and feet for the past one and a half years" (AR 642) and "difficulty doing tandem gait" (AR 643). Dr. Gupta's impressions included "peripheral polyneuropathy[,]"

"[l]eft-side sciatica," and "[s]evere osteoarthritis" in Bergner's left knee.  (AR 643).

On February 7, 2014, Bergner was found outside his apartment in a drunken state, and he was subsequently admitted to St. Joe Hospital.  (AR 719).  On February 20, 2014, Dr. Yap examined Bergner and found that he had frostbite and "multiple injuries" related to the February 7, 2014, incident.  (AR 746).  Dr. Yap noted that Bergner had an ulcer on his left heel, 6 millimeters in diameter, and numbness in his toes; she diagnosed him with peripheral arterial disease.  (AR 746).

On March 6, 2014, Bergner was examined by Dr. Cynthia Vanderbosch.  (AR 868).  Dr. Vanderbosch reported that Bergner was given Levaquin for his frostbite, and that, although his condition had improved from the frostbite, he still had two painful spots on his left foot.  (AR 868).  In the section of her report regarding Bergner's peripheral vascular system, Dr. Vanderbosch noted that he had a "min[imal] if any palpable pulses . . . ."  (AR 868).  Dr. Vanderbosch recommended that Bergner see a cardiovascular surgeon due to "severe [ABI]" on the left and a minimal ABI on the right.  (AR 868).

### III.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard.  *Clifford v. Apfel*, 227

F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id*. Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Id*. Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Id*.

## IV. ANALYSIS

### *A. The Law*

Under the Act, a claimant is entitled to DIB if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

In determining whether Bergner is disabled as defined by the Act, the ALJ conducted the familiar five-step analytical process, which required her to consider the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[5] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th

---

[5] Before performing steps four and five, the ALJ must determine the claimant's RFC, or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(a)(4). The RFC is then

Cir. 2001); 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  An affirmative answer leads either to

the next step or, on steps three and five, to a finding that the claimant is disabled.  *Zurawski v.*

*Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three

stops the inquiry and leads to a finding that the claimant is not disabled.  *Id*.  The burden of proof

lies with the claimant at every step except the fifth, where it shifts to the Commissioner.  *Id*. at

885-86.

## B. The ALJ's Decision

At step one, the ALJ found that Bergner satisfied the "insured status requirements" of the

Act through June 30, 2014.  (AR 20).  At step two, the ALJ determined that Bergner had the

following severe impairments:  severe degenerative changes in the left knee, neuropathy, and

alcohol dependence.  (AR 20-23).  At step three, that ALJ determined that Bergner did not have

an impairment or a combination of impairments that met or medically equaled the severity of one

of the listed impairments.  (AR 23-24).  Before proceeding to step four, the ALJ, in determining

Bergner's RFC, found that he could:

> lift and/or carry 20 pounds occasionally and 10 pounds frequently.
> He [could] stand and/or walk for six hours and sit for six hours out
> of an eight-hour workday.  [Bergner] [could] []not climb ladders,
> ropes, and scaffolds.  He [could] occasionally climb ramps/stairs,
> balance, stoop, kneel, crouch and crawl.  [Bergner] should avoid
> concentrated exposure to extreme cold, heat, wetness, humidity,
> excessive vibrations, irritants (such as fumes, odors, dust, and
> gases), poorly ventilated areas, and wet/slick/uneven surfaces.  He
> is also limited to simple routine repetitive tasks with simple work
> defines [*sic*] as SVP 1-2.

(AR 24).  Based on this RFC, the ALJ found at step four that Bergner could not perform his past

relevant work.  (AR 28-29).  The ALJ, considering the testimony of the VE and other evidence in

---

used during steps four and five to help determine what, if any, employment the claimant is capable of.  20 C.F.R. §§
404.1520(e), 404.945(a)(5), 416.920(a)(4).

the record, then found at step five that Bergner could perform a significant number of jobs in the national economy, and therefore, was not disabled.  (AR 29-30).

## C.  The ALJ Failed to Properly Consider Evidence of
### Bergner's Impairments at Step Three

Bergner argues that the ALJ erred at step three, which requires the ALJ to consider whether a claimant's medical findings meet or equal a Listing's criteria.  Specifically, Bergner argues that the ALJ erred by failing to discuss Listing 4.12, peripheral arterial disease, and by failing to conclude that he met or equaled the Listing criteria for subsection (A) of Listing 4.12.

At step three, the ALJ considered whether Bergner's condition met or equaled the requirements for Listings "1.02 *Major Dysfunction of a Joint*, 11.13 for *Peripheral Neuropathies*, 12.09 *Substance Abuse Disorders*, or any impairments listed . . . ."  (AR 23 (emphasis in original)).  The ALJ determined that none of Bergner's impairments satisfied any listing criteria; however, the majority of the ALJ's reasoning focused on evidence of Bergner's alleged mental impairments.  (*See* AR 24).  Regarding whether Bergner's other alleged impairments met or equaled a listing, the ALJ merely stated that his "condition does not satisfy the standard."  (AR 23).  The ALJ never mentioned Listing 4.12 by name or any evidence related to it during her step-three analysis.

To meet or equal a listed impairment, the claimant must satisfy all of the criteria of the listed impairment.  *Maggard v. Apfel*, 167 F.3d 376, 379-80 (7th Cir. 1999).  The criteria of Listing 4.12 is as follows:

> 4.12  Peripheral arterial disease, as determined by appropriate medically acceptable imaging (*see* 4.00A3d, 4.00G2, 4.00G5, and 4.00G6), causing intermittent claudication (*see* 4.00G1) and one of the following:
>
>> A.  Resting ankle/brachial systolic blood pressure ratio of less than 0.50.

OR

B.  Decrease in systolic blood pressure at the ankle on exercise (*see* 4.00G7a and 4.00C16–4.00C17) of 50 percent or more of pre-exercise level and requiring 10 minutes or more to return to pre-exercise level.

OR

C.  Resting toe systolic pressure of less than 30 mm Hg (*see* 4.00G7c and 4.00G8).

OR

D.  Resting toe/brachial systolic blood pressure ratio of less than 0.40 (*see* 4.00G7c).

20 C.F.R. § 404, Subpt. P, App'x. 1, 4.12.  The claimant bears "the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (citing *Maggard*, 167 F.3d at 380).  However, the Seventh Circuit has not required a lengthy articulation at step three. *Wurst v. Colvin*, 520 F. App'x 485, 488 (7th Cir. 2013) ("The ALJ's [one-sentence] analysis here was cursory, but it was nevertheless supported by substantial evidence that Wurst could ambulate effectively.").  "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015).  "[A] failure to do so . . . may require a remand." *Ribaudo*, 458 F.3d at 583 (citations omitted).

The ALJ did not specifically mention Listing 4.12 at step three of the analysis, and therefore the Court must determine whether this failure was combined with a perfunctory analysis, such that a remand is required. *Id*.  The Court agrees with Bergner that the ALJ did not provide a sufficient analysis of the step-three question.  In addition to not mentioning Listing

4.12, the ALJ did not evaluate at step three any of the evidence favorable to Bergner that was relevant to that listing.

Specifically, Dr. Yap diagnosed Bergner with peripheral arterial disease in her report dated February 20, 2014. (AR 746). In fact, during the administrative hearing, Attorney Trzynka brought evidence of Dr. Yap's diagnosis to the ALJ's attention. (AR 80). But even before making that diagnosis, Dr. Yap's notes reveal that Bergner may have satisfied some of the criteria of Listing 4.12. For example, Listing 4.12 requires an ABI of 0.50 or less, and on September 13, 2013, Dr. Yap found that Bergner's left ABI was between 0.36 and 0.41.[6] (AR 751-52). Moreover, Dr. Yap's use of ultrasound imaging to find a diminished ABI is consistent with Listing 4.12's requirements for using medical equipment to establish peripheral arterial disease. *See* 20 C.F.R. § 404, Subpt. P, App'x 1, § 4.00G2. Additionally, Dr. Yap found that Bergner had claudication in his left leg worse than in his right (AR 751), which may satisfy Listing 4.12's "intermittent claudication" requirement, 20 C.F.R. § 404, Subpt. P, App'x 1, 4.12; *see also* 20 C.F.R. § 404, Subpt. P, App'x 1, § 4.00G1 ("If you have peripheral arterial disease, you may have pain in your calf . . . ."). Therefore, the record contains at least some evidence, which the ALJ did not address at step three, that Bergner's condition may satisfy the requirements of Listing 4.12 subparagraph (A).[7] *See* 20 C.F.R. § 404, Subpt. P, App'x. 1, 4.12.

An ALJ's failure to "mention the specific listing [s]he is considering," combined with a "'perfunctory analysis' may require remand." *Ribaudo*, 458 F.3d at 583 (citations omitted). Moreover, it is well established that an ALJ may not ignore entire lines of evidence. *Arnett v.*

---

[6] The ALJ was apparently aware of Dr. Yap's findings during this examination, as she mentioned Dr. Yap's report in her step-two determination. (*See* AR 22 ("The claimant also stated that he experienced numbness in both feet with cramping in the legs. . . . Furthermore, diagnostics revealed mildly diminished right ABI and severely diminished left ABI as well as mild right ileofemoral disease, and significant left ilefemoral trifurcation disease.")).

[7] Bergner does not argue that his condition satisfies the criteria listed in subparagraphs (B) through (D), of Listing 4.12.

*Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). The Court finds that the ALJ's failure to mention Listing 4.12 or provide any analysis, much less a perfunctory analysis, at step three was error and warrants a remand.

The Commissioner argues that the ALJ's failure to discuss any evidence relevant to Listing 4.12 or mention the Listing by name is excused because Bergner did not provide evidence that he suffered from peripheral arterial disease for the requisite duration of 12 months. (DE 21 at 6 (citing 42 U.S.C. § 423(d)(1)(A); *Bauzo v. Bown*, 803 F.2d 917, 923 (7th Cir. 1986)). The Commissioner is correct that Bergner bears the burden "to show that [he] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). However, it is well established that the Commissioner "may not advance an explanation that the [ALJ] never made [her]self and may not attempt to support the decision with evidence the [ALJ] apparently did not consider." *Arnett*, 676 F.3d at 592 (citations omitted); *see Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010) ("[I]n defiance of the principle of *SEC v. Chenery Corp.*, 318, U.S. 80, 87-88 (1943), the government's lawyers who defend denials of disability benefits often rely heavily on evidence not (so far as appears) relied on by the administrative law judge, and defend the tactic by invoking an overbroad conception of harmless error." (collecting cases)).

Here, as discussed *supra*, the ALJ did not consider at step three any evidence related to peripheral arterial disease, including its duration. Consequently, the Commissioner may not claim before the district court that Bergner's peripheral arterial disease diagnosis was "made only once, or need[s] to be evaluated in context." *Arnett*, 676 F.3d at 592-93 (citations omitted).

Moreover, absent any mention of the medical evidence concerning peripheral arterial disease, the Court cannot decipher what impact the evidence had on the ALJ's determination at step three or whether the ALJ even considered the evidence at all at step three. *Brindis ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) ("[T]he ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statutes requires h[er] to do." (quoting *Stephens v. Heckler*, 766 F.2d 284, 288 (7th Cir. 1985))); *see, e.g.*, *Silva v. Barnhart*, No. 02 C 5681, 2003 WL 22425010, at *7 (N.D. Ill. Oct. 23, 2003) (remanding the ALJ's step-three decision where he failed to adequately address the criteria of Listing 14.02).

Nor does the ALJ's reliance on the state agency doctors rehabilitate her step-three oversight. Typically, "[t]he ALJ may properly rely upon the opinion" of state agency doctors regarding "medical equivalence at the initial and reconsideration levels of administrative review . . . ." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (citations and internal quotation marks omitted). But in this case, the diagnosis and other medical evidence concerning peripheral arterial disease (*see* AR 746, 751) occurred *after* the state agency doctors reviewed Bergner's medical records (AR 91-93, 95, 105-08). Thus, the state agency doctors never had the opportunity to review this evidence or to consider whether Bergner met or equaled Listing 4.12.

Therefore, the Commissioner's argument that that the ALJ's decision should be affirmed despite omitting any discussion of Listing 4.12 or medical evidence concerning peripheral arterial disease fails, and the case will be remanded.[8]

---

[8] Because the Court finds that remand is warranted due to the ALJ's failure to properly consider whether Bergner met or medically equaled Listing 4.12, the Court need not reach the remainder of Bergner's arguments for remand.

## V.  CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.  The Clerk is directed to enter a judgment in favor of Bergner and against the Commissioner.

SO ORDERED.

Entered this 14th day of December 2017.

/s/ Susan Collins               
Susan Collins
United States Magistrate Judge